UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
LOBO LAND, LLC,
    Debtor.                                                     No. 7-05-10262 SS

OMER MAY,
    Plaintiff,
v.                                                            Adv. No. 07-1125 S

LOBO LAND, LLC and
CAROL CAGAN aka Cappy Cagan,
    Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**AFTER TRIAL ON THE MERITS**

This matter came before the Court for trial on the merits of Plaintiff's complaint. Plaintiff appeared through his attorney Sutin, Thayer & Browne (Jay D. Hertz). After the filing of this adversary proceeding and upon Plaintiff's Motion, the Lobo Land, LLC bankruptcy was converted from a Chapter 11 to a Chapter 7 and Yvette Gonzales was appointed Trustee. Ms. Gonzales appeared at the trial through her attorney James A. Askew. Also after the filing of this adversary proceeding Carol Cagan filed a Chapter 13 petition with this Court. The trial of this adversary proceeding therefore did not attempt to assess any liability as to Ms. Cagan. Nor should this Memorandum Opinion be construed in any fashion as res judicata or collateral estoppel as to Ms. Cagan, who did not participate in the trial.

**FACTS**

The Court makes the following findings of fact from the admissions in the pleadings and judicial notice of this adversary case file and the main bankruptcy case file for Lobo Land, LLC.

1. In 2003, Plaintiff filed a foreclosure against Lobo Land, LLC in Colfax County, New Mexico. See Lobo Land case, doc 1, Statement of Financial Affairs, Question 4.

2. Lobo Land, LLC filed a Chapter 11 proceeding on January 14, 2005. The voluntary petition was signed by Carol Platt Cagan. Lobo Land case, doc 1.

3. The K-1's attached to Lobo Land, LLC's tax returns submitted as part of the initial report suggest that Carol Cagan was a 75% owner of the Debtor. Lobo Land case, doc 8, page 37.

4. Lobo Land, LLC filed a plan on October 11, 2005 and a First Modification on November 21, 2005. Lobo Land case, docs 73 and 75. The Plan ¶ 3.3 defines secured claims classes. Class III A is the claim of Plaintiff, secured by a first lien on "the May Land.[1]" Plan ¶ 6.3.1 sets out the treatment of the May claim:

> 6.3.1. Class III A: The allowed claim of May, secured by a first lien on the May Land, shall be satisfied as follows:
> 6.3.1.1. The allowed amount of the claim with interest accruing from the Effective Date at the rate of 8% per annum shall be paid in monthly installments of $2400.00, which will be applied first to interest accrued on the unpaid principal, then to principal, with a balloon payment of all principal and interest

---

[1] The "May Land" is defined in ¶ 1.3.2 as the tract of 24 acres of undeveloped land near Angel Fire, NM.

Page -2-

coming due at the time of the sixtieth monthly installment.

6.3.1.2. For purposes of this Plan, the principal and interest portion of the allowed amount of the May claim shall be $238,473.34, as of January 14, 2005, with interest accruing thereon until the Effective Date at the rate of $44.61 per diem, subject to the possible reduction of those calculated amounts in the event that Debtor presents proof of any payment which was not credited to the debt or proof of a miscalculation of the debt.

6.3.1.3. Debtor shall pay to May one or more lump sum payments totaling $40,000.00 from the proceeds of sales of the residential lots as such funds become unrestricted by order of the Court if such funds are not available prior to the Effective Date. Lobo Land shall promptly file such adversary proceedings as may be necessary to determine the validity of any adverse lien, claim or interest against the proceeds of the residential lot sales or against the residential lots in order to make such proceeds available to May.

6.3.1.4. Notwithstanding any provision to the contrary above, the May claims shall be paid in full upon the sale of the Ranch if the Ranch is sold prior to completion payments set out herein to satisfy the May claim.

6.3.1.5. May shall retain the liens securing his claim until such claim has been paid in full as set out herein.

6.3.1.6. Notwithstanding any provision herein to the contrary, May shall be paid no less than one-half of the net proceeds of the sale of the Snowflake property, upon closing of such sale, with such obligation to be evidenced by an "assignment of proceeds" executed by Carol Cagan in form satisfactory to May or approved by the Court, which instrument shall be tendered by Cagan prior to Confirmation of this Plan, and shall be effective only upon confirmation of this Plan.

6.3.1.7. Notwithstanding any provision herein to the contrary, the automatic stay shall terminate upon default in payment of any installment called for herein on the May claim, so as to allow May to avail himself of all remedies under his pre-petition note and mortgage.

6.3.1.8. Lobo Land shall continue all efforts to refinance the May land, shall continue to list the May Land for sale pursuant to the arrangements agreed to by Debtor and May prior to confirmation of this Plan (as

> such arrangements may be set out in any order of the
> Court or in any other form between Debtor and May), and
> shall continue all efforts to reach agreement with the
> Village of Angel Fire for the development, subdivision
> and sale of the May Land.

The First Modification added a ¶ 6.3.1.9:

> Notwithstanding any other provision of this plan, the
> dismissal of the foreclosure proceeding pending pre-
> petition by May against Lobo Land shall be without
> prejudice, and any applicable statute of limitation
> with respect to the May claims shall begin to run anew
> from the later of (1) the failure of the Debtor to
> perform any obligation owed to May under this plan, or
> (2) such other date as may be controlled by applicable
> law.

5.  The Plan, as modified by the First Modification, was confirmed on March 8, 2006. Lobo Land case, doc 85.

6.  After confirmation, Lobo Land, LLC sold some of the May property and the proceeds were deposited at CU Title. See Plaintiff's Trial exhibit 3.

7.  On July 9, 2007, Lobo Land, LLC filed a "Stipulated Motion to Release Monies in Escrow" ("Motion"), submitted by Donald A. Walcott for Scheuer, Yost & Patterson (Debtor's attorney), and approved by Walter L. Reardon (Attorney for Angel Fire Resort Operations[2]). See Plaintiff's Trial exhibit 2. The entire motion states: "Debtor Lobo Land, LLC and Creditor Angel Fire Resort Operations, by and through their undersigned attorneys,

---

[2] Plan ¶ 3.4 states that the claims of Angel Fire Resort Operations, LLC for membership fees, dues and other charges arising from or attributable to the residential lots are secured by liens "against any assets of the Debtor." The Plan is silent as to whether the liens are against the May Land.

hereby request that the Court enter the Order to Release Monies in Escrow submitted herewith." The Motion does not state Angel Fire Resort Operations' relation to the May Land or proceeds, nor does the Motion indicate Plaintiff's approval. The Motion's Certificate of Mailing does not indicate that Plaintiff received notice of the Motion.

8. On July 9, 2007, the Court entered the "Order to Release Monies in Escrow." It states: "All monies held in escrow by CU Title shall be released immediately and payable to Lobo Land, LLC." See Plaintiff's Trial exhibit 3. The Order was submitted by Donald A. Wolcott and approved only by Walter L. Reardon. No notice of the Order was given to Plaintiff.

9. Sometime after July 9, 2007, Plaintiff discovered that some of the May Land had sold and he did not receive the proceeds. He promptly filed this adversary proceeding on September 17, 2007 seeking damages and punitive damages.

10. On September 26, 2007, Plaintiff filed a Motion to Convert the bankruptcy case to chapter 7. Lobo Land case, doc 128.

11. Plaintiff also sought and obtained stay relief on November 2, 2007 to enable him to continue his foreclosure on the May Land. Lobo Land case, docs 124 and 136.

12. On January 3, 2008 the Court converted the bankruptcy case from Chapter 11 to Chapter 7. Lobo Land case, doc 144.

The parties also stipulated to several facts immediately before the trial:

13. Plaintiff's Exhibits 1 through 6 and Trustee's Exhibits C and D were admitted into evidence through stipulation.

14. Plaintiff's claim in this adversary is for $32,369.96, which is the amount released from escrow. <u>See also</u> Exhibit C.

15. The parties agreed that the $32,369.96 remains a secured claim, secured by the May Land consisting of four remaining lots worth in excess of the claim.

16. The parties agreed that any punitive damage claim would be unsecured and subordinated to the unsecured creditors' claims. <u>See also</u> 11 U.S.C. § 726(a)(4).

17. The parties agreed that any punitive damage claim would fit under 11 U.S.C. § 348(d) and be treated for all purposes as a prepetition claim.

18. The parties agreed that the funds in question were in fact payable to Plaintiff and were instead paid to Cagan by Lobo Land, LLC.

The Court also makes the following findings based on testimony and exhibits from the trial:

19. The Trustee intended to list the May Land for sale at $720,000.

20. If the May Land were to sell for $720,000, all claims and expenses would be paid in full, with assets being available for the equity holders of Lobo Land, LLC.

21. Cagan was the managing member of Lobo Land, LLC. Lobo Land, LLC had two members in total, Cagan and Cross. Cagan has a law degree.

22. Donald Wolcott, attorney for Debtor, who drafted the Motion and Order that released the funds, was aware of Plan ¶ 6.3.1.3. Wolcott took his directions from Cagan. Wolcott never contacted Plaintiff or his attorney Jay Hertz for consent or approval to release funds from escrow. Wolcott never gave notice of the proposed Motion or Order to any creditor except Walter Reardon. Wolcott acted with the knowledge of Cagan and through her, Lobo Land, LLC.

**CONCLUSIONS OF LAW**

1. A confirmed chapter 11 plan is a contract and an order of the Court. General Elec. Capital Corp. v. Dial Business Forms, Inc. (In re Dial Business Forms), 341 F.3d 738, 744 (8th Cir. 2003). See also U.S. Brass Corp. v. Travelers Ins. Gp., Inc. (In re U.S. Brass Corp.), 301 F.3d 296, 307 n. 40 (5th Cir. 2002). As a contract, it must be interpreted according to the general rules for contractual interpretation. Connolly v. City of Houston, Texas (In re Western Integrated Networks, LLC), 322 B.R. 156, 160-61 (Bankr. D. Colo. 2005).

2. A contract is deemed ambiguous only if it is reasonably and fairly susceptible to different constructions. Levenson v. Mobley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). In this case the Plan provisions regarding Plaintiff are clear and unambiguous. "Debtor shall pay to May one or more lump sum payments totaling $40,000.00 from the proceeds of sales of the residential lots as such funds become unrestricted by order of the Court if such funds are not available prior to the Effective Date." Plan ¶ 6.3.1.3.

3. Lobo Land LLC breached this contract when it failed to pay the $32,369.96 in escrow to Plaintiff. See also Finding of Fact 18 above.

4. "Every breach of contract gives the injured party a right to damages against the party in breach." Angel Fire Resort Operations, LLC v. Corda, 138 N.M. 50, 54, 116 P.3d 841, 845 (Ct. App.), cert. denied, 138 N.M. 145, 117 P.3d 951 (2005). The purpose of contract law is to compensate the nonbreaching party for damages caused by the breaching party's nonperformance. Paiz v. State Farm Fire and Casualty Co., 118 N.M. 203, 212, 880 P.2d 300, 309 (1994)(citing Romero v. Mervyn's, 109 N.M. 249, 257, 784 P.2d 992, 1000 (1989)).

> "It is a fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." Farnsworth [on Contracts] § 12.8, at 189-90; see also 3 Arthur L. Corbin, Corbin on Contracts § 606, at 647-48

Case 07-01125-s    Doc 32    Filed 10/15/08    Entered 10/15/08 12:58:02 Page 8 of 13

(1960) ("[O]ne is held responsible for harm to others
if it is caused by his 'folly' or his negligent
mistake, but his responsibility need not be carried so
far as to permit others to profit by reason of his
mistake.").

Id. See also Hood v. Fulkerson, 102 N.M. 677, 680, 699 P.2d 608, 611 (1985)(The general theory of damages is to make the injured party whole.  Duplication of damages or double recovery for injuries received is not permissible.)(Citations and quotation marks omitted.)  In this case, Plaintiff should therefore be able to recover his damages, but not in excess of his actual losses.

5.   A plaintiff has the burden of proving damages with reasonable certainty.  Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994).

6.   It might be argued that Plaintiff has not proved any damages at all.  For example, even after the funds were misdirected from the escrow, Plaintiff still has a fully secured claim with a first lien position that bears interest under the Plan ¶ 6.3.1.1 at the rate of 8%.  And all evidence demonstrates Plaintiff will be paid in full.  See Finding of Fact 15 above.  His only real complaint is that he did not receive the $32,369.96 earlier; however, the delay in payment is being compensated with interest.³  Nevertheless, the simple facts remain: Plaintiff was

---

³ The Court is not minimizing Plaintiff's complaint.  Lobo Land, LLC not only breached its contract with Plaintiff, but violated a Court order when it paid the funds to Carol Cagan. Lobo Land, LLC has received some punishment already, by being
(continued...)

entitled to receive $32,369.96 when those funds were generated, but did not receive them. Plaintiff therefore has been deprived of the timely receipt of those funds, regardless of whether he can expect to be fully paid at a later date. An analogous situation would be that of a mortgagee owed a periodic payment under the terms of a mortgage note. The fact that repayment of the note at a fully adequate interest rate is assured would not be grounds for refusing to grant a judgment for the failure to make the periodic payment timely.

7. Plaintiff also seeks attorney fees as part of his damages. But, under the American Rule litigants are responsible for their own attorney fees. New Mexico Right to Choose/Naral v. Johnson, 127 N.M. 654, 657, 986 P.2d 450, 453 (1999). It is true that New Mexico has recognized three categories where an exception might be made to the American Rule. Id. at 659, 986 P.2d at 455. Those are: "(1) exceptions arising from a court's inherent powers to sanction the bad faith conduct of litigants and attorneys, (2) exceptions arising from certain exercises of a court's equitable powers, and (3) exceptions arising simultaneously from judicial

---

[3](...continued)
involuntarily converted to Chapter 7 and having the automatic stay terminated on the May Land. Further punishment, if any, will come from the United States Attorney's office, to which this case is being referred for possible violation of bankruptcy crimes. See 18 U.S.C. 152, 153. See also, e.g. United States v. Atiyeh, 330 F.Supp.2d 499 (E.D. Pa. 2004)(controlling shareholder of debtor in possession charged with embezzlement and fraudulent concealment of funds under 18 U.S.C. 152 and 153).

and legislative powers." Id.  The first, the "inherent powers", are those described as the power of a court to impose sanctions on litigants and attorneys "in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." Id. (Citation omitted).  What Lobo Land, LLC did in this case is unrelated to the Court's regulation of its docket, promoting judicial efficiency, or deterring frivolous filings.  It was an intentional and willful breach of contract outside of the presence of the Court.  Exception 1 does not apply.

The second, the "equitable powers", are those described as the power of a court arising from its equitable jurisdiction. Id. at 660, 986 P.2d at 456.  Exception 2 does not apply because the Court is not exercising its equitable jurisdiction in ruling on Lobo Land, LLC's breach of contract action.

The third, the "judicial and legislative powers" exception also does not apply.  This exception only comes into play in "contexts traditionally viewed as equitable" and each is traceable to a statute or court rule. Id. at 661, 986 P.2d at 457.  Lobo Land, LLC's breach does not fall into this category.

Therefore, in sum, the Court finds no basis for awarding Plaintiff any attorney's fees in this case.

8.   Finally, Plaintiff seeks punitive damages, alleging outrageous behavior of Lobo Land, LLC.  Having acted through its managing member, Ms. Cagan, arguably Lobo Land, LLC ought to be

punished for deliberately delivering to its managing member a substantial sum of funds which were to go to Plaintiff.[4] The problem with assessing punitive damages against Lobo Land LLC however, is that an award of such damages to Plaintiff may conceivably result in a diminution of what other creditors receive in the case. For example, Lobo Land's Summary of Schedules shows total assets of $4,402,000.00 and total liabilities of $5,831,577.00. Lobo Land case, doc 1. While the claims register suggests that the claims against the estate are much lower than the Summary of Schedules indicates, the process of adjudicating claims and of monetizing and distributing the assets of the estate is not complete. And §726(a) specifies that an allowed claim for punitive damages has priority over payment of interest on any allowed claim. Thus an unconditional award of punitive damages at this stage of the administration of the main case may effectively serve to punish other creditors rather than only the debtor. In consequence, the Court will award punitive damages, in a maximum amount of $16,000.00, only to the extent that such an award will not diminish payment of all other claims owed by the estate (including the $32,369.96 awarded by this judgment) including any applicable interest.

**CONCLUSION**

---

[4] To repeat, this finding/conclusion is not in any way binding on Ms. Cagan as to her personal liability.

Page -12-

For the reasons set forth above, the Court will enter a Judgment for Plaintiff Omer May in the amount of the $32,369.96 plus interest at the rate of 8% per annum against Defendant Lobo Land, LLC.  The Court will further award punitive damages of $16,000 plus interest at the rate of 8% per annum in favor of Plaintiff Omer May and against Lobo Land LLC, but only out of whatever funds are left over after all other claims are paid in full with interest but before any payment goes to Lobo Land LLC.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: October 15, 2008

copies to:

Jay D Hertz
PO Box 1945
Albuquerque, NM 87103-1945

James A Askew
PO Box 1988
Albuquerque, NM 87103-1888

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608